**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **EDWARD LEE MORGAN, SR.,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | No. 21-CV-3040 (RBW) |
| | * | |
| **DISTRICT OF COLUMBIA, et al.,** | * | |
| | * | |
| Defendants. | * | |

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

Plaintiff Edward Lee Morgan, Sr., by his attorneys, James K. Davis, Esq., and the Walton

Law Group, LLC, respectfully submits this opposition to Defendants' Motion to Dismiss the

Complaint.  A memorandum of points and authorities in support of this motion and a proposed

order are attached for the Court's consideration.

Dated:  April 18, 2022                                    Respectfully submitted,

                                                         WALTON LAW GROUP, LLC

                                                         /s/   James K. Davis
                                                         James K. Davis, Esq.
                                                         D.C. Bar # 417036
                                                         10905 Fort Washington Road, Suite 201
                                                         Fort Washington, MD 20744
                                                         (301) 292-8357  *office*
                                                         (301) 292-9439  *fax*
                                                         jdavis@cwaltonlaw.com
                                                         *Counsel for the Plaintiff*

**TABLE OF CONTENTS**

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

A.     In 2012-2013, Plaintiff engaged in protected activity against the D.C. Fire and
Emergency Medical Services Department and AFGE Local 3721 and suffered
retaliation and discrimination in response . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

B.     The Comprehensive Merit Personnel Act Does Not Preclude Plaintiff from
Filing this Action in Federal Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

CASES

*AFGE, Local 3721 v. District of Columbia*, 2005 WL 1017877, No. 05-0472 (JDB)
(D.D.C. May 2, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
*Bridges v. Kelly*, 84 F.3d 470 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
*Conley v. Gibson*, 355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
*Crockett v. District of Columbia Metro. Police Dep't*, 293 F. Supp. 2d 63 (D.D.C. 2003) . . . . . 14
*D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . 13
*District Props. Assocs. v. District of Columbia*, 743 F.2d 21 (DC. Cir. 1984) . . . . . . . . . . . . . . 14
*Doe v. Marsh*, 105 F.3d 106 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
*Holcomb v. Powell*, 433 F.3d 889 (D. D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
*Intermor v. Incorporated Vill. of Malverne*, No. 03-CV-5164, 2007 WL 2288065
(E.D.N.Y. Aug. 8, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
*Johnson v. District of Columbia*, 552 F.3d 806 (D.C. Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . 13
*Legal Aid Soc'y v. City of N.Y.*, 114 F. Supp. 2d 204 (S.D.N.Y.2000). . . . . . . . . . . . . . . . . . 13
*McKenna v. Weinberger*, 729 F.2d 783 (D.D.C. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . 12
*McManus v. District of Columbia*, 530 F. Supp. 2d 46 (D.D.C. 2007) . . . . . . . . . . . . . . . . . . 13
*Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . 12
*Moses v. Howard Univ. Hosp.*, 474 F. Supp. 2d 117 (D.D.C. 2007) . . . . . . . . . . . . . . . . . . 12
*Murray v. Town of N. Hempstead*, 853 F. Supp. 2d 247 (E.D.N.Y.2012) . . . . . . . . . . . . . . . . 13
*Patsy v. Board of Regents of State of Fla.*, 457 U.S. 496 (1982) . . . . . . . . . . . . . . . . . . . . . . . 14
*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
*Robinson v. District of Columbia*, 748 A.2d 409 (D.C. 2000) . . . . . . . . . . . . . . . . . . . . . . . . 13
*Silverman v. Barry*, 727 F.2d 1121 (D.C. Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
*Stokard v. Moss*, 706 A.2d 561 (D.C. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
*Thompson v. District of Columbia*, 428 F.3d 283 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . 13

STATUTES

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 12, 13, 14
D.C. Code §§ 2-1401.01 through 2-1411.06 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
District of Columbia Administrative Procedure Act, D.C. Code §§ 2-509 *et seq.* . . . . . . . . . . . . . 1
District of Columbia Comprehensive Merit Personnel Act of 1978,
D.C. Code §§ 1-616.51 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **EDWARD LEE MORGAN, SR.,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | **No. 21-CV-3040 (RBW)** |
| | * | |
| **DISTRICT OF COLUMBIA, et al.,** | * | |
| | * | |
| Defendants. | * | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

**INTRODUCTION**

Plaintiff brought this action to secure the protection, and to redress, the deprivation of

rights secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, challenging Defendants'

termination of Plaintiff's employment in violation of the District of Columbia Comprehensive

Merit Personnel Act of 1978, D.C. Code §§ 1-616.51 *et seq.*, the District of Columbia

Administrative Procedure Act, D.C. Code §§ 2-509 *et seq.*, and the District of Columbia Human

Rights Act (as codified in D.C. Code §§ 2-1401.01 through 2-1411.06, for violations of

Plaintiff's right to due process (both procedural and substantive) and equal protection under the

United States Constitution.

The Court should deny Defendant's Motion to Dismiss the Complaint in this action.

**FACTS**

Plaintiff, Edward Lee Morgan Sr., is an African American (Black) male, born December 18, 1966, with more than 25 years of successful civil service with D.C. Fire & EMS as an EMT, and who has more than a decade of experience training other EMTs in the field.

Plaintiff effectively represented himself as a *pro se* party until he mistakenly waived/ withdrew his appeal in an administrative hearing following a remand of his case by Judge Kravitz of the District of Columbia Superior Court.

After graduating from high school, Plaintiff served as a volunteer firefighter with the Oxon Hill (Md.) Fire Department, Company 42, where he earned the top rank in his 80-hour basics class and was, among other things, awarded Firefighter of the Year in 1983, 1984, and 1985.

On April 1, 1987, Plaintiff, 21 years old at the time, was notified of his selection for a vacant EMT position with the D.C. Fire Department, Emergency Ambulance Division – a Career Service Appointment.

Throughout his employment with the Agency, Plaintiff was an active member of his union, the American Federation of Government Employees, Local 3721, serving as a collective bargaining representative from 1999 until 2012.

Plaintiff received increasing responsibility and regular career ladder promotions.

In 2004, Plaintiff's work performance was evaluated and rated as being "Outstanding," with EMS Supervisor, Lt. William W. W. McLaughlin, writing the following:

> EMT Advanced Morgan has proven himself to be an outstanding
>
> EMT with exceptional leadership skills.  He has a history of

dependability and has trained several new employees . . . .  There have been no disciplinary actions or problems with EMT Morgan as he is observant to the rules and regulations set forth by administration.  He is well knowledgeable of and adherent to the medical protocols and EMS Operations procedures . . .  Ambulance 25 under the watch of EMT Morgan has been a model unit in this sector of the city.  The quality of care provided by EMT Morgan has been exemplary.

As a result of Plaintiff's successful performance of his duties, he also served as the Agency's Field Training Officer, enlarging the scope of his responsibilities to include training new EMTs on medical protocols and EMS operations.

### FEMS Bulletin No. 83

Prior to July 1, 2009, EMTs in the District who were due for certification or recertification had the option of taking either the National Registry of Emergency Medical Technicians ("NREMT") examination or an examination administered by the District of Columbia Department of Health ("DOH").  However, DOH ceased to administer the EMT certification or recertification examinations as of July 1, 2009.

On or about February 3, 2010, D.C. Fire & EMS issued Bulletin No. 83, articulating its new policy requiring all Agency employees to complete the National Registry of EMTs (NREMT) certification process at their respective certification level.  "NREMT" EMTs would then be required to present a valid NREMT certification in order to receive the D.C. EMS certification card required for all EMS providers in the District of Columbia.

The NREMT certification policy, by its own terms, was and is applicable to all Agency employees.  However, since implementation, the policy has been applied arbitrarily.

Upon information and belief, more than 200 employees of D.C. Fire & EMS were working as EMTs without the requisite NREMT and/or DOH certification as of 2012.

Subsequent to promulgating the Fire & EMS Bulletin No. 83 as its new operating policy and rule, D.C. Fire & EMS issued "Agency General Order XXIV, GO-2006-14," which exempted all employee hires prior to January 1, 1987, from the NREMT certification requirement, and thus allowing those employees to continue to work as EMTs.  This is what was represented to the Office of Employee Appeals ("OEA") (Administrative Judge Hochhauser on remand) by D.C. Fire & EMS counsel.

### Agency Action and Appeals

Plaintiff's Plaintiff's EMS certification lapsed on or about July 30, 2012, however he failed to pass the NREMT examination between December 2010 and January 2012.

In direct contravention of the policy articulated in Fire & EMS Bulletin No. 83, Plaintiff was never allowed to complete the remaining detailed process set forth and mandated in Bulletin No. 83.  That process included, *inter alia*, two additional NREMT examination attempts, despite being granted an extension to schedule the remaining examinations in January 2012 by the NREMT Executive Director.

Despite Plaintiff's record, years of outstanding service and exemplary performance, Plaintiff was found incompetent and issued an Advance Written Notice of Proposed Termination.

After Plaintiff's timely request for a hearing, in November 2012, an administrative hearing was held to review the proposed Agency action.

Plaintiff, representing himself *pro se* in the hearing, argued that he personally knew of multiple other EMTs who either failed NREMT certification more than six times yet were allowed to return to the field, or who were ostensibly exempted from the NREMT certification requirements altogether.

The hearing officer refused to address the merits of Plaintiff's discrimination claim, stating in response merely that "as Hearing Officer, it is not my role . . . to decide whether there is disparity in treatment with respect to firefighters." Hearing Officer's Recommended Decision, D.C. Fire & EMS Dep't Case No. C-12-26 (Nov. 2, 2012), at 4 (Exhibit A).

While Hearing Officer Kim McDaniel found just cause for discipline, she ultimately concluded that the proposed penalty of termination for a one-time finding of incompetence was disproportionate to the *Douglas* factors and the Agency's own Table of Penalties.

Following the administrative hearing, Plaintiff was issued a Final Agency Decision that purported to affirm Hearing Officer McDaniel's conclusions while simultaneously upholding the proposed termination, despite the Hearing Officer's inapposite recommendation. Plaintiff was terminated on November 29, 2012, pursuant to the Final Agency Decision issued November 26, 2012. Notice of Final Decision/Removal, D.C. Fire & EMS Dep't Case No. C-12-26 (Exhibit B).

On December 28, 2012, Plaintiff timely appealed the Agency's final decision to the D.C. Office of Employee Appeals ("OEA"). Notably, the matter was not assigned to Administrative Judge Sommer J. Murphy until February of 2014, and OEA did not issue an Initial Decision until May 29, 2015.

In her Initial Decision, AJ Murphy determined that there were no material facts at issue that would warrant an evidentiary hearing and stated that the record was at that point closed.

AJ Murphy found that Chief Ellerbe's final decision to terminate Plaintiff was not only inconsistent with Hearing Officer Kim McDaniel's findings but was also inconsistent with the Agency's own Fire & EMS Chief's Decision Form, wherein Chief Ellerbe indicated that he approved the Hearing Officer's decision. Initial Decision, OEA Matter No. 1601-0039-13 (May 29, 2015) (Exhibit C).

AJ Murphy further held that the guidelines imposed by the Table of Appropriate Penalties, as found in Section 1619 of the DPM indicated the appropriate penalty for a first offense of incompetence is suspension from five (5) to fifteen (15) days.

Accordingly, OEA reversed Plaintiff's termination, substituting instead a 15-day suspension for a first offense of incompetence and awarding him all back-pay and benefits lost as a result of his removal almost three years prior.

The Agency then filed a Petition for Review of AJ Murphy's decision by the OEA Board. In its Petition for Review, while the Agency conceded that termination was not within its Table of Appropriate Penalties for a first offense of incompetence, it contended that the penalty was still appropriate, and in support thereof, attempted to offer new arguments from *Dana Brown v. Department of Youth Rehabilitation Services*, OEA Matter No. 1601-0036-07R12 (Apr. 30, 2015) and *Robin Halprin v. D.C. Department of Mental Health*, OEA Matter No. 1601-0107-08 (Feb. 23, 2015) – two distinguishable cases concerning medical incompetence as a cause of action.

-6-

The OEA Board, comprised of Judges Price, Abbott, Douglass, and Wilson, denied the Agency's Petition in its September 2016 Opinion and Order on Petition for Review, affirming the decision of the prior administrative judge that the penalty of removal exceeds the range of penalty outlined for a first offense of incompetence.   Opinion and Order on Petition for Review, OEA Matter No. 1601-0039-13 (Sept. 16, 2016) (Exhibit D)

The Board further held that the Agency waived its arguments regarding the rulings in *Brown* and *Halprin*, as they were raised for the first time on Petition for Review and were not preserved for appeal as part of the evidentiary record.

The Agency then sought review of the OEA Board's Order affirming the AJ's order in *District of Columbia Fire & Emergency Med. Servs. Dep't v. District of Columbia Office of Employee Appeals,* Case No. 2016 CA 007541 P(MPA) (D.C. Super. Ct., Sept. 22, 2017).  Judge Neal E. Kravitz, in his Order Granting Petition for Review of Agency Decision, found that the Board committed clear error as a matter of law in deciding that Fire & EMS waived certain arguments on appeal of the AJ's decision, holding that Fire & EMS was merely citing new authority consistent with the position it took before the AJ.  Order Granting Petition for Review of Agency Decision, *District of Columbia Fire & Emergency Med. Servs. Dep't v. District of Columbia Office of Employee Appeals,* Case No. 2016 CA 007541 P(MPA) (D.C. Super. Ct., Sept. 22, 2017) (Exhibit E).

 Pursuant to Judge Kravitz's Order, Fire & EMS's petition for review was granted and OEA's final opinion was reversed, with the matter remanded to the Board.

Notably, Judge Kravitz cited the legal standard of review, Rule 1(g) of the Superior Court Rules of Agency Review, as being founded "exclusively upon the administrative record;" he then

begins the discussion by stating that Fire & EMS proffered an entirely new argument regarding jurisdiction on review ("FEMS did not present this argument to the AJ or the Board."), but contended that they would be "free to raise the issue of the Board's jurisdiction on remand."

On remand, the matter was assigned to a different AJ, who stated that the remand was limited to two issues – OAH's jurisdiction and the appropriateness of the penalty of termination, despite the failure of D.C. Fire & EMS Department to raise the issue on the record prior. Plaintiff, still *pro se*, reasserted his claim of disparate treatment, which had previously gone unconsidered as being without merit in prior proceedings.

Plaintiff, however, noted that "[t]he multiple violations committed by the DC Fire and EMS Department need to be proven. . . . [M]y complaints that have been ongoing since 2012 . . . have been ignored by the DC City Council officials and officials within the fire department. It is my belief that this has been done purposely." Memorandum to Judge Hochhauser, OEA Matter No. 1601-0039-13R18 (Feb. 23, 2018) (Exhibit F).

In an October proceeding Plaintiff stated that he would withdraw "the entire matter" if he could not prove his claim of disparate treatment, an issue that was not even in dispute on remand according to OEA.

Judge Hochhauser stated that although Employee had the burden of proof, Agency was in a better position to provide the needed information and documents since they were likely in its possession.

In response to Plaintiff's claim of disparate treatment, Fire & EMS conceded that several individuals had continued working without NREMT certification, and submitted "Agency

-8-

General Order XXIV, GO-2006-14 Section 3(2)" which purported to exempt each of seven employees from the certification requirement as having been hired prior to January 1, 1987.

The Agency's concession that numerous EMTs known to Plaintiff were ostensibly exempted from the requirements of the NREMT certification policy stands in stark contrast with the Agency and OAH's consistent prior position that Plaintiff's failure to obtain NREMT certification rendered him unable to lawfully perform the functions of his job or caused him to be a danger to the public.

Remarkably, no such January 1, 1987 date or "Agency General Order" had been offered by the Agency in defense prior to the remand, though Plaintiff had previously requested access to any such information or documentation repeatedly throughout every step of the instant proceeding, to no avail.

That on December 7, 2018, Plaintiff, seemingly without impetus, withdrew/waived his appeal to OEA in a handwritten memorandum, which stated in part: "As of December 14, 2018, I am withdrawing my complaint from the office of the OEA.  Withdrawing from OEA is no admission of guilt, but rather moving in another direction."  However, on November 29, 2018, Plaintiff sent a memorandum to Judge Hochhauser in which he stated, "[a]fter seven years, the OEA office is limited to certain things under the law.  It is now time to move on with this case. That means, it should be removed from the hands of OEA and placed in a federal court system for a more accurate revew."  Memorandum to Judge Hochhauser, OEA Matter No. 1601-0039-13R18 (Nov. 29, 2018) (Exhibit G).

Pursuant to the December 2018 Memorandum, OEA issued its Corrected Initial Decision on Remand on February 15, 2019, finding that Plaintiff's withdrawal thereby rendered the entire appeal of his termination and the subsequent remand moot.

The Corrected Initial Decision details at great length Administrative Judge Hochhauser's repeated discussions with the Plaintiff, advising him of his high burden of proof in his disparate treatment claim.  Conversely, there is no indication on the record that Plaintiff was adequately informed as to the burden of proof which the Agency must satisfy for all of Plaintiff's other claims.

In light of Plaintiff's *pro se* pursuit of the instant matter, combined with the convoluted procedural posture of the several appeals and subsequent remand, it is not clear from the record that Plaintiff understood, or even knew the implications of withdrawing/waiving his claim, or even that he was withdrawing his entire appeal/claim/case after all these years of litigation. Clearly, Plaintiff did not understand that he was withdrawing his entire successful administrative appeal that granted him reinstatement and backpay.  Plaintiff's decision to withdraw the disparate treatment claim, no doubt, was influenced when the Administrative Judge told him he would never meet his burden of proof as to one of his claims without addressing the burdens of proof on his other claims.

At no time was Plaintiff, a *pro se* litigant, advised, encouraged, or even suggested, to consult with an attorney, or to otherwise seek independent legal advice before taking such action to withdraw his appeal and waive his rights.

The Superior Court Order issued by Judge Kravitz granted the Agency's petition for review of the OEA Board's final decision to affirm Administrative Judge Murphy's initial

decision.  However, on remand, SEVEN YEARS after that initial decision, rather than having the

Board review its final decision pursuant to the Superior Court order, Administrative Judge

Murphy's determination was instead reversed by Administrative Judge Louis Hochhauser

On or about April 12, 2019, Plaintiff, still *pro se*, filed a handwritten complaint with this

Court seeking redress in the above-described matter (Civil Action No. 19-1029 UNA).  However,

on July 3, 2019, this Court entered a Memorandum Opinion and Order dismissing Plaintiff's

complaint and civil action without prejudice as having failed to state a claim on which relief

could be granted.

## STANDARD OF REVIEW

A motion to dismiss will not be granted unless it appears "beyond doubt that the plaintiff

can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v.

Gibson*, 355 U.S. 41, 45–46 (1957).

## ARGUMENT

**A.**   **In 2012-2013, Plaintiff engaged in protected activity against the D.C. Fire and Emergency Medical Services Department and AFGE Local 3721 and suffered retaliation and discrimination in response.**

Plaintiff had been challenging the leadership and policies of the D.C. Fire and Emergency

Medical Service Department and AFGE Local 3721, a powerful organization within D.C. Fire &

EMS, during 2012 and 2013.  See Exhibit H (evidence of Plaintiff's protected activity); see also

Exhibit A at 3 (listing in the Summary Evidence used by a hearing examiner on November 2,

2012, documents such as "Memo to Akoussa Tyus, President of NAACP, from Edward Morgan,

re Violations of Federal Contract and Discrimination Actions against Personnel in DC Fire Dept,

dated 6/27/12") and Exhibit F ("[M]y complaints have been ongoing since 2012."). By

September 24, 2012, Plaintiff received an Advance Written Notice of Removal. Exhibit B.

Close temporal proximity between protected activity and discharge alone often

supports an inference of retaliation or discrimination. *Moses v. Howard Univ. Hosp.*, 474

F. Supp. 2d 117, 124-125 (D.D.C. 2007). A plaintiff may establish a causal relationship between

protected activity and retaliation by showing that "(1) the employer knew that the plaintiff

engaged in protected activity, and that (2) the adverse action took place shortly after plaintiff's

participation in that activity." *Id.* (quoting *Holcomb v. Powell*, 433 F.3d 889, 903 (D. D.C.

2006); *McKenna v. Weinberger*, 729 F.2d 783, 791 (D.D.C. 1984) (holding that a plaintiff

established prima facie retaliation case where her discharge occurred 22 days after she

complained about sexism)).

Section 1983 provides the mechanism for municipal liability through a course of conduct,

pattern, or practice of the municipality. See, *e.g.*, *Monell v. Department of Soc. Servs.*, 436 U.S.

658, 692-695 (1978). The multiple acts of retaliation, culminating in the termination, constitute

strong evidence of a consistent course and pattern of conduct of retaliation by Defendant where

an employee engages in protected activity. Additionally, even a single decision by municipal

policymakers can constitute a policy whose unconstitutionality can lead to liability. See *Pembaur

v. City of Cincinnati*, 475 U.S. 469, 480 (1986). Again, here, there is a consistent course of

conduct indicating that Defendant unlawfully retaliated against Plaintiff.

Plaintiff did not knowingly waive his rights to sue under 42 U.S.C. § 1983.

"[C]onstitutional rights may be waived upon clear and convincing evidence that the waiver is

knowing, voluntary, and intelligent." *Intermor v. Incorporated Vill. of Malverne*, No. 03-CV-

5164, 2007 WL 2288065, at *8 (E.D.N.Y. Aug. 8, 2007) (emphasis added) (citing *D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185 (1972)); see also *Doe v. Marsh*, 105 F.3d 106, 111 (2d Cir. 1997). However, "[w]aiver of federal remedial rights such as an action under 42 U.S.C. § 1983 will not be lightly inferred, and courts 'must indulge every reasonable presumption against waiver.' " *Murray v. Town of N. Hempstead*, 853 F. Supp. 2d 247, 259 (E.D.N.Y.2012) (quoting *Legal Aid Soc'y v. City of N.Y.*, 114 F. Supp. 2d 204, 226-227 (S.D.N.Y.2000)).

**B.     The Comprehensive Merit Personnel Act Does Not Preclude Plaintiff from Filing this Action in Federal Court.**

The District of Columbia Comprehensive Merit Personnel Act ("CMPA") does not preclude Plaintiff from filing this action in federal court. While under the CMPA procedure judicial review generally occurs in the District of Columbia courts at the culmination of the administrative appeal or grievance procedure, *Johnson v. District of Columbia*, 552 F.3d 806, 811 (D.C. Cir. 2008); *Robinson v. District of Columbia*, 748 A.2d 409, 411 n.4 (D.C. 2000), "[t]he procedure's exclusivity and exhaustion requirements do not, however, necessarily foreclose a subsequent suit in local or federal court challenging the adequacy of the process itself." *Johnson*, 552 F.3d at 811; *Thompson v. District of Columbia*, 428 F.3d 283 (D.C. Cir. 2005) (reversing dismissal of terminated employee's pre-termination due process claim).

The CMPA is only the general remedy for claims falling within its ambit. *Johnson v. District of Columbia*, 552 F.3d at 810-811; *Stokard v. Moss*, 706 A.2d 561 (D.C. 1997). Because the CMPA does not grant Plaintiff the full scope and relief requested in his present federal claims, such as punitive damages and redress for constitutional and statutory wrongs, he is not precluded from bringing this federal law claim. *McManus v. District of Columbia*, 530 F. Supp.

-13-

2d 46, 69 (D.D.C. 2007). See also *Bridges v. Kelly*, 84 F.3d 470, 476-477 (D.C. Cir. 1996);

*Crockett v. District of Columbia Metro. Police Dep't*, 293 F. Supp. 2d 63 (D.D.C. 2003).

Furthermore, there is no requirement to exhaust District of Columbia law remedies in order to

pursue a claim under 42 U.S.C. § 1983. *AFGE, Local 3721 v. District of Columbia*, 2005 WL

1017877 at *5, No. 05-0472 (JDB) (D.D.C. May 2, 2005). See also *District Props. Assocs. v.*

*District of Columbia*, 743 F.2d 21, 27, n.3 (DC. Cir. 1984) (citing *Patsy v. Board of Regents of*

*State of Fla.*, 457 U.S. 496 (1982)); *Silverman v. Barry*, 727 F.2d 1121, 1123 (D.C. Cir. 1984).

Therefore, Plaintiff's claim is not precluded by the CMPA and he is entitled to bring it in this

Court. This Court is not bound by the decisions or standards of review exercised by OEA, the

Defendants, or CMPA.

## CONCLUSION

There are genuine issues as to material fact in existence and the Defendants are not

entitled to judgment as a matter of law. Plaintiff's federal case is not limited by the District of

Columbia Comprehensive Merit Personnel Act. Plaintiff respectfully requests that the Court

deny Defendant's motion and further requests the Court to set this matter in for trial.

Dated: April 18, 2022                                Respectfully submitted,

                                                     WALTON LAW GROUP, LLC

                                                     /s/   James K. Davis
                                                     James K. Davis, Esq.
                                                     D.C. Bar # 417036
                                                     10905 Fort Washington Road, Suite 201
                                                     Fort Washington, MD 20744
                                                     (301) 292-8357  *office*
                                                     (301) 292-9439  *fax*
                                                     jdavis@cwaltonlaw.com
                                                     *Counsel for the Plaintiff*

-14-