**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| EDWARD LEE MORGAN, SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 21-3040 (RBW) |
| | ) |
| DISTRICT OF COLUMBIA, <u>et al.</u>, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## <u>MEMORANDUM OPINION</u>

The plaintiff, Edward Lee Morgan, Sr., brings this civil action against the defendants, the

District of Columbia, Mayor Muriel Bowser; the District of Columbia Fire and Emergency

Medical Services Department ("FEMS"); and FEMS Chief John Donnelly.  <u>See</u> Complaint for

Damages and for Declaratory and Injunctive Relief ("Compl.") at 1, ECF No. 1.  The plaintiff

alleges that he was terminated from his employment as an Emergency Medical Technician

("EMT") with FEMS in violation of his due process and equal protection rights under the

Fourteenth Amendment and in violation of the District of Columbia Administrative Procedure

Act ("DCAPA"), D.C. Code § 2-501, the District of Columbia Comprehensive Merit Personnel

Act of 1978 ("CMPA"), D.C. Code § 1-616.51, and the District of Columbia Human Rights Act

("DCHRA"), D.C. Code § -1401.01.[1]  <u>See</u> <u>id.</u> ¶ 1.  Currently pending before the Court is the

defendants' motion to dismiss.  <u>See</u> Defendants' Motion to Dismiss the Complaint

---

[1] Although the plaintiff references the DCHRA in the Complaint's preliminary statement, he does not refer to it again.  The plaintiff also seeks relief "[p]ursuant to the Declaratory Judgment Act[,]" <u>id.</u> at 15, but the Declaratory Judgment Act, 28 U.S.C. § 2201, does not provide an independent cause of action.  <u>Jones v. U.S. Secret Service</u>, 701 F. Supp. 3d 4, 14 n.1 (D.D.C. 2023).

("Defs.' Mot.") at 1, ECF No. 9. Upon careful consideration of the parties' submissions,[2] the Court concludes for the following reasons that it must (1) grant the defendants' motion to dismiss the claims against Mayor Bowser, FEMS Chief Donnelly, and the FEMS, (2) grant the defendants' motion to dismiss the plaintiff's constitutional claims, (3) grant the defendants' motion to dismiss the defendants' CMPA claim, and (4) decline supplemental jurisdiction over the plaintiff's remaining DCAPA claims.

## I.    BACKGROUND

### A.    Factual Background

The following allegations are derived from the plaintiff's Complaint, unless otherwise specified. The plaintiff, an African American male, began working as an EMT with the FEMS in 1987. See Compl. ¶¶ 12, 15. When the plaintiff began working as an EMT, all individuals in the District of Columbia were required to have an active EMT certification in order to be employed as an EMT. See id. ¶¶ 20–21. According to the Complaint, prior to July 1, 2009, all EMTs in the District of Columbia were able to satisfy their certification requirements by passing a certification or recertification examination administered by either the District of Columbia Department of Health ("DOH") or the National Registry of Emergency Medical Technicians ("NREMT"). See id. ¶ 20. That changed on July 1, 2009, when the DOH stopped administering EMT certification and recertification examinations. See id. Thereafter, in February 2010, the FEMS issued Bulletin No. 83, "articulating its new policy requiring all [FEMS] employees to complete the . . . []NREMT[] certification process[.]" Id. ¶ 21. After Bulletin No. 83 became

---

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss the Complaint ("Defs.' Mem."), ECF No. 9; (2) the plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss the Complaint ("Pl.'s Opp'n"), ECF No. 11; and (2) the Reply in Support of Defendants' Motion to Dismiss the Complaint ("Defs' Reply"), ECF No. 12.

effective, the FEMS issued Agency General Order XXIX, GO-2006-14, which "exempted all employee[s] hire[d] prior to January 1, 1987 from the NREMT certification requirement[.]" Id. ¶ 24.

The plaintiff's certification lapsed on or about July 30, 2012, and he "failed to pass the NREMT [recertification] examination between December 2010 and January 2012." Id. ¶ 25. According to the plaintiff, he was "never allowed to complete the remaining detailed process set forth and mandated in Bulletin No. 83," which "included . . . two additional NREMT examination attempts[.]" Id. ¶ 26. Having failed to pass the NREMT recertification examination, "[the p]laintiff was found incompetent and issued an Advance Written Notice of Proposed Termination." Id. ¶ 27. The plaintiff appealed the proposed termination by requesting an administrative hearing, which was held in November 2012. See id. ¶ 28. At that hearing, the plaintiff, representing himself, argued that "he personally knew of multiple other EMTs who either failed NREMT certification more than six times[,] yet were allowed to return to the field, or who were ostensibly exempted from the NREMT certification requirements altogether." Id. ¶ 29. However, according to the plaintiff, "[t]he hearing officer refused to address the merits of [his] discrimination claim[.]"[3] Id. ¶ 30. The plaintiff alleges that the administrative hearing officer ultimately determined that he should be disciplined for not passing the recertification exam, but "concluded that [the FEMS'] proposed penalty of termination for a one-time finding of incompetence was disproportionate to the Douglas[v. Veterans Admin., 5 M.S.P.B. 313 (1981),] factors and the Agency's own Table of Penalties." Id. ¶ 31. Following the hearing, the plaintiff was issued a Final Agency Decision that, according to the plaintiff, "purported to affirm

---

[3] The Complaint does not explain the basis for the plaintiff's "discrimination claim."

[the hearing officer's] conclusions while simultaneously upholding the proposed termination." Id. ¶ 32.  The plaintiff's employment was terminated on November 29, 2012.  Id.

On December 28, 2012, the plaintiff, still representing himself, appealed the FEMS' final termination decision to the D.C. Office of Employee Appeals ("OEA").  Id. ¶ 35.  The matter was assigned to an administrative judge in February 2014, and the administrative judge issued an Initial Decision on May 29, 2015.  Id.  According to the plaintiff, the administrative judge determined that the FEMS' decision to terminate him "was inconsistent with the [hearing officer's] findings," id. ¶ 37, and "the guidelines imposed by the Table of Appropriate Penalties . . . indicated [that] the appropriate penalty for a first[-time] offense of incompetence is a suspension from five [ ] to fifteen [ ] days," id. ¶ 38.  After the administrative judge issued her decision, the plaintiff claims that the OEA reversed the administrative judge's termination, substituted a fifteen-day suspension, and awarded the plaintiff "all back-pay and benefits lost as a result of his removal almost three years prior."  Id. ¶ 39.

Subsequently, the FEMS "petitioned for review of [the] OEA's decision, appealing only the portion regarding the appropriateness of the penalty of termination for a first-time offense of incompetence."  Id. ¶ 40.  The plaintiff alleges that, in its Petition for Review, the FEMS "conceded that termination was not within its Table of Appropriate Penalties for a first[-time] offense of incompetence, [but] it contended that the penalty was still appropriate" and, in support thereof, attempted to offer new arguments based on two recent OEA decisions.  Id. ¶ 41.  The OEA Board affirmed the prior administrative judge's decision that termination exceeded the range of appropriate penalties for a first-time incompetence offense, see id. ¶ 42, and "further held that [the FEMS] waived its arguments regarding the rulings in Brown[ v. Dep't of Youth Rehabilitation Servs., OEA Matter No. 1601-0036-07R12 (Apr. 30, 2015)] and Halprin[ v. D.C.

Dep't of Mental Health, OEA Matter No. 1601-0107-08 (Feb. 23, 2015)], as they were raised for the first time on Petition for Review[,]" id. ¶ 43.  The FEMS petitioned the Superior Court of the District of Columbia for review of the OEA Board's decision.  Id. ¶ 44.

On September 22, 2017, Superior Court for the District of Columbia Judge Neal E. Kravitz "found that [the OEA Board] committed clear error as a matter of law in deciding that [the FEMS] waived certain arguments on appeal," id., and remanded the case to the OEA Board for further proceedings, see id. ¶ 45.  On remand, the OEA Board assigned the case to a different administrative judge who, the plaintiff alleges, "stated that the remand was limited to two issues—the OAH's jurisdiction and the appropriateness of the penalty of termination[.]"  Id. ¶ 47.  According to the plaintiff, during an October 2017 remand proceeding, he again raised his disparate treatment claim and, even though that claim was not the subject of the remand, he alleges that the FEMS acknowledged that seven agency employees continued working without the NREMT certification, having received an exemption under the General Order because they had been hired prior to January 1, 1987. Id. ¶¶ 48, 50.  This admission seemingly prompted the plaintiff to declare that he would "withdraw the entire matter" if he could not prove his claims of disparate treatment.  Id. ¶ 48 (internal quotation omitted).

On December 7, 2018, the plaintiff withdrew his OEA appeal by submitting a handwritten memorandum, which read in part, "[a]s of December 14, 2018, I am withdrawing my complaint from the office of the OEA." Id. ¶ 53. The plaintiff further indicated that "[w]ithdrawing from [the] OEA is no admission of guilt, but rather [constitutes] moving in another direction."  Id.  Then, on February 15, 2019, the OEA issued a Corrected Initial Decision on Remand, which, according to the plaintiff, found that his withdrawal "rendered the entire appeal of his termination and subsequent remand moot."  Id. ¶ 54.

The plaintiff alleges that the Corrected Initial Decision "details at great length [the administrative judge's] repeated discussions with [him], advising him of his high burden of proof in his disparate treatment claim," but provides "no indication . . . that [he] was adequately informed as to the burden of proof which [the FEMS] must satisfy for all of [his] other claims." Id. ¶ 55.  Thus, the plaintiff now claims that "it is not clear from the [administrative] record that [he] understood, or even knew the implications of withdrawing/waiving his claim, or even that he was withdrawing his entire appeal/claim/case after all these years of litigation." Id. ¶ 56.  The plaintiff also claims that he was never "advised, encouraged, or even suggested, to consult with an attorney" before making that decision." Id. ¶ 57.

## B.   Procedural Background

On April 12, 2019, the plaintiff, proceeding pro se, filed a lawsuit in this court based on the above facts.  See Complaint at 4–6, No. 19-cv-1029 (UNA), ECF No. 1.  The plaintiff filed an Amended Complaint in that matter on June 24, 2019, see Amended Complaint, No. 19-cv-1029 (UNA), ECF No. 6, which a different judge of this court dismissed sua sponte because it did not set forth a short and plain statement of the claim showing entitlement to relief, see Memorandum Opinion at 1, No. 19-cv-1029 (UNA), ECF No. 7.

Subsequently, on November 16, 2021, the plaintiff—now represented by counsel—filed his Complaint in this case, see Compl. at 1, and on March 18, 2022, the defendants filed their motion to dismiss the Complaint, see Defs.' Mot. at 1.  On April 18, 2022, the plaintiff filed his opposition, see Pl.'s Opp'n at 1, and on April 25, 2022, the defendants filed their reply to the opposition, see Defs.' Reply at 1.

6

## II.    STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether a complaint has properly "state[d] a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged."  Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted).  While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth."  Iqbal, 556 U.S. at 679.  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678 (citing Twombly, 550 U.S. at 555).  Also, the Court need not "accept legal conclusions cast as factual allegations[,]" or "inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint[.]"  Hettinga, 677 F.3d at 476.  In resolving the motion, the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice."  Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

### III.    ANALYSIS

The defendants argue that "[t]he Court should dismiss [the p]laintiff's claims in their entirety" pursuant to Fed. R. Civ. P. 12(b)(6). Defs.' Mem. at 1. The defendants first argue that the claims against all defendants except the District must be dismissed because the FEMS is non sui juris and the plaintiff fails to allege any actions taken by Mayor Bowser or FEMS Chief Donnelly. The defendants further argue that: (1) the plaintiff has failed to state a constitutional claim; (2) he has failed to exhaust his claims under the DCAPA or the Comprehensive Merit Personnel Act ("CMPA") ; and (3) he has not alleged any factual basis for liability under Monell. Id. at 1–2. In response, the plaintiff argues that "[t]he [CMPA] . . . does not preclude [him] from filing this action in federal court," Pl.'s Opp'n at 13, and seeks to raise, for the first time, a retaliation claim, see id. at 11–13.[4]

The defendants argue in reply that the plaintiff did not respond to their arguments that "the Court should dismiss [the p]laintiff's constitutional due process and equal protection claims for failure to plausibly state a claim for relief (Count I)," Defs.' Reply at 2; and that "the Court should dismiss [the p]laintiff[']s claims under the [DCAPA] . . . for failure to exhaust administrative remedies and because the D.C. Court of Appeals has exclusive jurisdiction over DCAPA claims," id.

The Court will first address the defendants' arguments that the plaintiff does not allege any basis for personal liability with respect to Mayor Bowser and Chief Donnelly. The Court

---

[4] Federal Rule of Civil Procedure 15(a) sets the procedure for the amendment of claims, Fed. R. Civ. P. 15, and parties may not "circumvent the procedural rule . . . to bring an entirely new cause of action for the first time in response to [a party's] motion to dismiss[,]" Shinabargar v. Bd. of Trs. of Univ. of D.C., 164 F. Supp. 3d 1, n.16 (D.D.C. 2016). As the defendants note, the Complaint does not contain a retaliation claim, see Defs.' Reply at 3, and the Court may not now allow the plaintiff to amend his initial claim through the opposition motion, see Shinabargar, 164 F. Supp. at 32 (granting motion to dismiss when the plaintiff attempted to raise a Title IX retaliation claim for the first time in the opposition to the motion). The Court will therefore not consider the plaintiff's new retaliation claim.

will then address whether the FEMS is capable of being sued before determining whether the plaintiff's claims survive the defendants' Rule 12(b)(6) challenge.

## A.      Whether the Court Should Dismiss the Plaintiff's Claims Against Mayor Bowser and FEMS Chief Donnelly

Rule 8(a) of the Federal Rules of Civil Procedure requires that complaints contain, inter alia, a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a). Rule 8(a) also requires that the plaintiff "give the defendant fair notice of what the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (holding that the complaint must contain enough "factual matter" to suggest liability) (citation and alterations omitted). Here, the plaintiff names Mayor Muriel Bowser and FEMS Chief John Donnelly as defendants in the Complaint, but, as the defendants note, makes no factual allegations against them. See generally Compl.; Defs.' Mem. at 7–9. The plaintiff does not contend otherwise or, indeed, even respond to this argument. See generally Pl.'s Opp'n. The Court therefore finds that without any factual allegations relating to Mayor Bowser or Chief Donnelly, the Complaint does not satisfy Rule 8(a)'s requirements and, in any event, the plaintiff has conceded the argument that the claims against Mayor Bowser and Chief Donnelly should be dismissed. See Toms v. Off. of the Architect of the Capitol, 650 F. Supp. 2d 11, 18 (D.D.C. 2009) (Walton, J.) ("[A] court in this District, at least when the plaintiff is represented by counsel, may consider as conceded any arguments raised by a defendant's Rule 12(b)(6) motion that are not addressed in a plaintiff's opposition."). The Court will therefore dismiss the claims against Mayor Bowser and Chief Donnelly.

**B.**      **Whether the Court Should Dismiss the Plaintiff's Claims Against the FEMS**

"[T]he overwhelming weight of precedent in this Circuit . . . holds that[,] in the absence of explicit statutory authorization, bodies within the District of Columbia government are not suable as separate entities." Klayman v. Fox, 18-cv-1579 (RDM), 2019 WL 2396538 at *11 (D.D.C. 2019) (emphasis omitted) (citing Newman v. D.C. Courts, 125 F. Supp. 3d 95, 102–03 (D.D.C. 2015)); see also Kundrat v. District of Columbia, 106 F. Supp. 2d 1, 5 (D.D.C. 2000) (collecting cases where courts have "consistently applied this rule to dismiss claims against governmental agencies or departments of the District of Columbia").  The defendant argues that the FEMS is one such entity, see Defs.' Mem. at 9, and the plaintiff again offers no argument in opposition.  The Court agrees with the defendant and, because the plaintiff has also conceded this argument, will therefore dismiss the claims against the FEMS.

**C.**      **Whether the Plaintiff Has Adequately Established a Constitutional Violation**

In Count I of the Complaint, the plaintiff alleges that he "enjoyed a cognizable interest in continuing employment absent a cause for discharge" and, because he did not "knowingly nor voluntarily" withdraw his appeal before the OEA Board, the defendants violated his Fourteenth Amendment rights to due process and equal protection of the law by terminating his employment.  Compl. ¶¶ 66–67.  But, as the defendants point out, the Fourteenth Amendment does not apply to the District of Columbia.  Defs.' Mem. at 10; see Bolling v. Sharpe, 347 U.S. 497, 498–99 (1954), supplemented sub nom. Brown v. Bd. of Educ. of Topeka, Kan., 349 U.S. 294 (1955); see also Speed v. Mills, 919 F. Supp. 2d 122, 128 (D.D.C. 2013) ("Unlike the Fourteenth Amendment, the Fifth Amendment applies to the District of Columbia.").  However, even if the Court construes the plaintiff's claim under the Fifth Amendment, the defendants argue that the plaintiff still "fails to state a claim for the deprivation of due process or equal

10

protection on the merits." Defs.' Mem. at 10. In any event, the Court need not address the question of whether the plaintiff has stated a Fifth Amendment claim because he has failed to respond to this argument, and the Court will therefore treat it as conceded and dismiss Count I.[5]

## D.    Whether the Plaintiff Has Adequately Established Municipal Liability

The defendants move to dismiss Count V of the Complaint on the basis that the plaintiff has "fail[ed] to assert any cognizable constitutional violation[,]" and ultimately "offers no facts showing the District's municipal liability under any theory." Defs.' Mem. at 18. The Court agrees, and the plaintiff does not argue otherwise. The Court must therefore dismiss Count V of the Complaint.

## E.    Whether the Plaintiff Has Exhausted His Administrative Remedies Under the CMPA

The defendants also argue that the plaintiff's claim in Count IV that the FEMS terminated him "arbitrar[ily] and capricious[ly]" and "in excess of statutory jurisdiction" has not been administratively exhausted under the CMPA. Id. at 16–17. The "CMPA establishes a merit personnel system that, among other things, provides for . . . employee discipline through adverse action proceedings [and] prompt handling of employee grievances[.]" McManus v. District of Columbia, 530 F. Supp. 2d 46, 77 (D.D.C. 2007) (internal quotations and citation omitted). The CMPA is "plainly intended" to "create a mechanism for addressing virtually every conceivable personnel issue among the District, its employees, and their unions-with a reviewing role for the courts as a last resort, not a supplementary role for the courts as an alternative forum." Id. (quoting District of Columbia v. Thompson, 591 A.2d 621, 634 (D.C. Cir. 1991)).

---

[5] The plaintiff also does not respond to the defendants' argument that this claim is not administratively exhausted under the CMPA. So, dismissal on that ground is also warranted.

11

Under the CMPA,

> a District employee displeased with an adverse action for cause that results in removal — i.e., termination — may appeal it to the OEA . . . . An ALJ then makes an initial decision whether to uphold, reverse, or modify the action, which becomes final unless the aggrieved employee or the District files a timely petition for review . . . . When such a petition is filed and the OEA denies it, the initial decision becomes final; conversely, if the OEA grants such a petition, the OEA's subsequent decision represents its final one. Once there is such a final decision from the OEA (and only then), either party may appeal it to D.C. Superior Court and subsequently to the D.C. Court of Appeals.

Greer v. Bd. of Trs. of Univ. of D.C., 734 F. Supp. 3d 75, 80–81 (D.D.C. 2024) (internal quotations and citations omitted). The defendants' argument, therefore, seems to be that because the plaintiff withdrew his claim before the OEA issued a final decision, those claims were not administratively exhausted. See Defs.' Mem. at 17.

The plaintiff responds that the CMPA "does not preclude [him] from filing this action in federal court." Pl.'s Opp'n at 13. The plaintiff admits that "under the CMPA procedure judicial review generally occurs in the District of Columbia courts at the culmination of the administrative appeal or grievance procedure," Pl.s' Opp'n at 13, but contends that the CMPA's exclusivity and exhaustion requirements do not necessarily "foreclose a subsequent suit in local or federal court challenging the adequacy of the process itself," id. Putting aside whether he can even pursue his claim in this Court, the plaintiff does not explain what his basis is for challenging "the adequacy of the process itself," and the record before the Court, particularly the fact that he requested and was provided administrative hearings, indicates he received adequate process. See generally Compl. ¶¶ 28–54 (describing the plaintiff's administrative appeals).

The plaintiff also argues that "[b]ecause the CMPA does not grant [him] the full scope and relief requested in his present federal claims, such as punitive damages and redress for constitutional and statutory wrongs, he is not precluded from bringing this federal law claim."

12

Pl's. Opp'n at 13.  But the Court has already determined that it must dismiss the plaintiff's

constitutional claim and he is not pursuing any other "federal law claim[s]."  See id.

Moreover, the plaintiff does not meaningfully explain how he has satisfied the CMPA's

exhaustion requirement.  And, because the plaintiff has failed to show that he exhausted his

administrative remedies under the CMPA, the Court must dismiss the claim in Count IV of the

Complaint for that reason alone.  See Greer 734 F. Supp. 3d at 84 ("The only question, then, is

whether failure to exhaust the CMPA's remedies calls for dismissal, and the answer is a

resounding yes.").

**F.      Whether the Court Should Exercise Supplemental Jurisdiction Over the Plaintiff's DCAPA Claims**

Having dismissed the plaintiff's constitutional and CMPA claims, the only claims

remaining before the court are the plaintiff's DCAPA claims in Count II and Count III.  "A

district court 'may decline to exercise supplemental jurisdiction over a claim . . . if, as in this

case, it 'has dismissed all claims over which it has original jurisdiction[.]'"  West v. Huvelle, No.

18-cv-2443 (RBW), 2019 WL 6498818, at *6 (D.D.C. Dec. 3, 2019) (citing 28 U.S.C.

§ 1367(c)(3)).  "When it comes to D.C. administrative law claims, courts in this Circuit have

expressed a strong preference—if not a firm rule—against district courts' exercise of

supplemental jurisdiction once all federal claims have been dismissed."  Phoenix Ush LLC v.

Dist. Dep't of Transportation, No. 25-CV-922 (JMC), 2025 WL 1190793, at *10 (D.D.C. Apr.

24, 2025), aff'd, No. 25-7060, 2025 WL 3013527 (D.C. Cir. Oct. 24, 2025).  The Court will

therefore join the other Courts in this District that have declined to exercise supplemental

jurisdiction over DCAPA claims following the dismissal of all claims that were cognizable in

federal court.  Accordingly, the DCAPA claims in Count II and Count III are dismissed.

## IV.    CONCLUSION

For the foregoing reasons, the Court must grant the defendants' motion to dismiss

**SO ORDERED** this 20th day of March, 2026.[6]

REGGIE B. WALTON
United States District Judge

---

[6] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.